Morning. May it please the court. When Shane Hare first met law enforcement on the 9th of May, law enforcement knew nothing about him, not even his name. When law enforcement arrested him on the eighth day of their relationship, on May 16, law enforcement had undertaken no further investigation and sought no further information regarding Mr. Hare. The simple fact is law enforcement's conduct in this case is the paradigm of why discovery should have been permitted by the district court regarding the undertaking the Stash House sting case. What specific discovery do you think you would need? They gave you the training manual and that kind of stuff. What kind of discovery? I think the proper heading would be in the direction of their criteria for selection in the District of Maryland, which has produced 32 black and no other defendants. I think it would be directed to the policies in place in the District of Maryland. We know nothing more than that one page of what was used in the District of Maryland, whereas I submit in our brief we assemble information from many other districts. Why isn't that just phishing though? Do you have some burden before you can get all that? It's just the numbers? You think just the numbers of 32, is that enough? We have the numbers. We have a stated policy which is not followed. We have individuals who have shown no predisposition whatsoever, none, because they were absolutely unknown to law enforcement. Well, you know that, so why do you need more discovery? Because I think it's the only way to lay out the claim of selective enforcement, not selective prosecution. We're not yet at the point of selective prosecution, and I think that is a completely different and separate issue. It should be at least some kind of, maybe a high burden, but at least some burden that you know specifically. What do you have to even suggest there is something else that bases this on race? I mean, what is there? The fact that the people weren't known, what does that have anything to do with the race? I think that if law enforcement is doing its job correctly, they are seeking out the worst of the worst, which is the allegation brought forward by the ATF as to the kinds of people the Stash House Sting program is directed towards. Can't it be the worst of the worst are the people who do these kind of things, not who have already done them? Then we'd have to find out if, in other cases, the ATF undertook no investigation as well and ensnared people with no records as well. ATF didn't set out to get Mr. Hare. Somebody else brought Mr. Hare in. That's correct. So it wasn't ATF that selected Mr. Hare. It was a government agent, Mr. Bowden, the target of the Sting, about whom they did no investigation. Remember, they have one confidential informant who wouldn't have served to sustain a warrant. There's no record concerning the reliability of the informant. There's no record provided concerning whether or not this informant had provided false information in the past, had been used reliably, was being paid, nothing. They have a person who says Bowden's involved and has a crew, and that's all they know. So based on what they knew about Bowden, Bowden was approached, Bowden went out and developed this crew of which Mr. Hare was a part. Is that correct? No. Oh, okay. I'm sorry. Then correct me. Mr. Bowden was offered the opportunity. I think it's fair to say from the transcript of the first meeting. Don't go too far now. What is wrong factually with the question that Judge Biggs asked you? You can't shade it just the way you want it because on the representation of the facts, her representation sounds pretty good. There's no evidence that Mr. Hare was participatory with Mr. Bowden in any conduct vaguely similar to this. Wait, wait, wait, wait. She said he went out and got his crew. Not his crew. He brought a crew, a group of people willing to do work. The uncontroverted evidence at trial was he never told Williams or Hare what this was about. Mr. Hare testified. It doesn't make any difference. They're not his crew. They're individuals he brought. That's the difference. To do a criminal enterprise. Excuse me? To do what they believed would be a criminal enterprise. They were not told that beforehand. Well, just wait one second. To be a member of the crew in the terms she used, and you can correct me if I'm wrong, doesn't mean that they're hardened criminals. She meant he brought to the table people that appeared to the government but were willing to do along with him what the government was suggesting. Isn't that what you meant? That is correct. Everybody in the business understands that. It did not appear to the government because they had no information about these individuals. What do you mean about that? You don't have to know that. Yes, you do. That's what the ATF says. What if I say this? I want you to help me rob a bank. Can you get some guys and you bring some guys? Isn't that a reasonable assumption? Those guys are willing to help you rob the bank that I want to do it? It's an assumption. It's far from reasonable, and the ATF's protocols require them to do more to ensure that these – Let me say this. If your whole case is built on whether or not my scenario makes a reasonable assumption, I think you have a – I think you have an almost impossible burden to climb. That's the way the world works. You say that the ATF can't do that? They can't approach somebody they think might be willing and ask him if he's willing and then ask him if he can bring some people and he brings some people. They can't assume those people are willing to be involved? The Supreme Court in Jacobson makes clear that you need predisposition. You need to be engaged in this sort of criminal enterprise. What about the time they show up? Why doesn't that indicate they're willing to be involved? Because we don't know what they were told, and the uncontroverted evidence is they were told nothing. That's the problem. Did you plead guilty before your trial? I can't remember. Was there a trial? Absolutely. So the facts, the government's entitled to the facts their way, not your way. There was no facts in support of the government theory. No reasonable inferences from the facts as presented. The government's entitled to that, not you. Isn't that correct? The government's entitled to that once they get past their Jacobson threshold. Doesn't it follow that your client agreed to the plan at the first meeting? Didn't that show predisposition? Absolutely not, Your Honor. There's absolutely no authority suggesting that predisposition can be attributed to conduct after you meet the government. Predisposition, as I believe it's Judge Kuczynski says in the Pullman decision, exists prior to law enforcement's approach to a particular defendant. That's why it's called predisposition. Then, can a manifestation at the time someone first meets with an officer, could their conduct there manifest a predisposition? Of course it can. I respectfully submit it cannot, and that's why . . . It most certainly could. What if the officers . . . I'm not saying this scenario in this case. The officer met with somebody and said, you know, we're kind of thinking about a way to make some money, and the defendant goes, I'll tell you how we can make some money. We can rob stash houses. Would that not be evidence of predisposition? Absolutely not, because I don't think that Your Honor's scenario tracks the facts of the case. You know what, now? I started my question with, it's not the facts in this case, but my question was, and I'll walk through it again for you, can't evidence . . . conduct at the first meeting be evidence of predisposition? You went, absolutely not. I agree. And I gave you a scenario where it absolutely is, isn't it? I respectfully submit it is not. Predisposition must exist ahead of time, and you must filter your analysis of predisposition, Your Honor, which I certainly respect, but your scenario is short of the facts of this case in a crucial fashion. It had nothing to do with the facts of this case. I was asking you about your position on predisposition and when and how it can exist, and if it can exist before the first meeting with the officer. You say it cannot in any scenario. I suggest to you, based on my question and what most people would think is the appropriate answer, that you may not be right about that, but that doesn't mean you can't argue it. I think the question of predisposition goes to an understanding of who the person is who sits down at that first meeting, number one. In Mr. Harris' case, there is no criminal record. There's no involvement in firearms. There's no involvement in crimes of violence. There's no involvement in drugs. Does every criminal do a first crime? I hope he would say yes to that. Yes, Your Honor. Obviously, everybody starts somewhere, but when you start, based upon the life-changing windfall presented by the ATF. Can you have a predisposition to commit crime before you commit crime? Yes or no? Certainly. Are you conflating entrapment as a matter of law with outrageous conduct? I think that the line between the two blurs, Your Honor, with respect. How does it do that? I'm curious. Entrapment as a matter of law, I think, would be facts even more egregious than those in this case. I think that there's certainly an argument that this was entrapment as a matter of law to the point of seeing a dismissal of the charges, if that's what Your Honor is asking about. Certainly, we got the entrapment instruction from Judge Chasnow at trial. I should know I wrote it because there is no instruction in the Fourth Circuit or in Sand that completely addresses the question. But I think that it is difficult to parse outrageous governmental misconduct and entrapment as a matter of law when we have the rather shocking facts involved in this case. People who have no history for doing this kind of crime, no prior involvement, know nothing, number one, absolutely uncontroverted. The government makes no effort to find out who these people are. The fact that they're here is a form of profiling as much as anything else. You associate with Bowden. We think he's a criminal. We haven't even established that yet. They did no investigation of his record to confirm what the confidential informant had told them. Do we have anything on entrapment in front of us? Is there anything on appeal related to entrapment? No. Okay. All right. I'm sorry. I didn't mean to cut you off. No, thank you. All right. And then there's the amount of money. You got the entrapment argument and argument to the jury in evidence of that. With all due respect, the fault, if there is fault to be attributed, rests with me. I was trial counsel. I wrote the entrapment instruction. I did the opening. I did the closing. If I couldn't convince the jury it's on me, I can't suggest otherwise, most respectfully, Your Honor. I just think the jury was howlingly wrong, and I think the jury would have maybe been right if they had been provided more information. Well, I think you read too much, at least into my question. I wouldn't suggest that there was any fault with it. I was just clarifying that entrapment was argued, evidence presented and argued to the jury. That's all I was doing. I didn't suggest there's any argument. And no issue has been taken for this appeal on that entrapment. I wanted that to be clear, that that's not what we're arguing here. All right. We are arguing that the jury, properly instructed, may have come to a different decision with more information, and that's the information we sought and were denied, and that's information concerning the conduct of the ATF as to how they got to 32 black defendants and nothing else in the District of Maryland, a district which is only 30 percent black. With regard to a crime that's committed nationwide only 36 or 38 percent of the time by black defendants, according to the Sentencing Commission's most recent statistics. Apparently the judge did give you some information. One page of information. It substantially confirmed all of the much broader information that we assembled during the appeal. She reviewed more information. She just gave you one sheet of information. Isn't that correct? She did review other information, yes. But I . . . What standard? I'd say your time's run out, so I'll ask you. You saved some time. You saved some time. Unless you want to take some of your time and use it. Sure. I'm happy to answer Your Honor's question. No, no, no. I can ask you. I can ask you later. It's just going to be a repeat question, see if I understood the answer. We have time. We'll get you back up here. Thank you very much. Mr. Rosenstein. Thank you, Your Honor. Good morning. May it please the Court. Just to briefly address a few points raised by opposing counsel. First of all, Your Honors, I believe, as Judge Floyd and Judge Biggs pointed out, the defense is confusing the issues of entrapment and selective prosecution. The question that Mr. Montemarano raises concerning the defendant's predisposition is not the issue with regard to selective prosecution. His concern that the jury was wrong, which, as Judge Biggs pointed out, he hasn't raised the entrapment issue on appeal, so it's got no relevance here. But the discovery in selective prosecution doesn't bear on the issue of predisposition. What Mr. Montemarano represented is he wants to find out what was in the minds of the ATF agents. That doesn't tell you anything that's relevant to the issue in the trial. Well, I think his argument goes like this. Because you do target, based on some improper factor, that you go to someone, a black man, who has no predisposition, but you use money and other things to get them to do things that you want to arrest them for. I think you might not accept that argument, but I think that's how his argument goes on selective. He really is arguing selective enforcement is what he's arguing. But my point, Your Honor, is that wouldn't go to any issue that the jury was deciding with regard to entrapment. He has all the evidence. He presented the entrapment defense. As he pointed out, the jury rejected the entrapment argument, and he hasn't appealed that. Yeah, but, by the way, I'm not representing him. He can do a fine job of representing himself, but what he really is stating, I think, is he should have had material so he could have made an argument not to the jury, but to the court, that we shouldn't even be going to the jury. Isn't that what he's arguing? Well, but, Your Honor. And it does, by the way, some of that does seem to blend into entrapment. And I know it sounds a lot the same to me, but if I understand his argument, I'm not sure that I do, and he can speak for himself. But isn't that the argument he's making? I need to have more information. He wanted to argue that this prosecution should have been ended immediately, never gone to the jury. He saw he lost at the jury, but isn't that his argument? That's the argument he should be making if he's appealing selective prosecution. My point, though, Your Honor, is what he's really arguing is entrapment when he talks about predisposition. And I do want to just briefly point out that we respectfully submit that the defense is wrong with regard to his interpretation of the need for predisposition in Jacobson. We don't believe in any way that case stands for the proposition that a defendant needs to be predisposed based on information known to law enforcement before law enforcement comes in contact with the defendant. In fact, the issue of predisposition, which, again, goes to a jury issue of entrapment, not to selective prosecution, but that issue, Your Honor, allows the government to introduce evidence that would tend to show the defendant's predisposition. And his reaction to the inducement is evidence of his predisposition. It does not have to precede the interaction with law enforcement. And so, Your Honor, I just want to address one other issue, and that is if you were to follow the logic of the defendant's argument, particularly with regard to Mr. Hare, what he seems to be suggesting is that even if the government had a properly predicated sting investigation, which we submit we did, and that it was appropriate to target Mr. Bowden and tell him to bring your crew members, that when Mr. Hare arrived at the meeting and represented that he was a crew member, the government should have told him to leave. That's essentially the argument the defense seems to be making because he hasn't identified anything the government actually did wrong. Mr. Hare showed up. The government followed their protocol. They engaged Mr. Hare in conversation. The record includes video recordings. This was all above board of the conversations with the defendants. Maybe even a more interesting question would have been, we call it crew. He may have called it crew. I'm not exactly sure. But when the accomplices or two of the accomplices showed up, maybe under his theory you'd have to spit out those who had criminal records and those who didn't. And you may have to say, you three guys can stay and you two guys have to go. You can't even stay in this meeting. I just don't think that's the way that it works. That's not the way criminal activity is conducted. Criminal activity, as you know, it isn't born completely co-aid. It's in co-aid for the longest time as people decide what they're going to do and how they're going to do it. That's correct, Your Honor. And the record includes the evidence of what happened at the meetings. And I believe it's page 780, among other places in the record, where it establishes that the undercover agent engaged these defendants in conversation, followed the normal protocol, if somebody had said they were not interested in proceeding. Mr. Rosenstein, in a case like this, to me, it always seems a difficult issue, not maybe factually difficult, but difficult how to handle, would be when somebody asserts or alleges a very egregious issue, such as selective prosecution or really selective enforcement. And we heard, we heard, he just said, he slipped in the word profiling. But when you do that, and then they claim the government and its activities is undertaking its job using improper facts to enforce the law. Of course, the next claim is, of course, we can't be sure exactly what the government's doing until we get to review what the government has done. And that's why the court has to look at what the burden is and what the standard is. Address that for me. Yes, Your Honor. You understand my point, don't you? When somebody goes, Your Honor, as a district judge trying the case, it's clear to us that we believe that they are selectively enforcing the law. They're going after poor people, black people, fill in the words, poor white people, people who live in this neighborhood. And the judge goes, okay, government. The government goes, absolutely not. Yes, Your Honor. And, you know, it's always a claim, but we need to know more about why the government does it for us to be able to support that claim. Absolutely, Your Honor. I think it's fair to say that almost every defendant feels that they've been prosecuted unfairly and would like the government to prosecute somebody else. But the law is quite clear on this, and it derives, Your Honor, I think the most articulate or the most eloquent explanation comes from Justice Powell in Waite v. United States, where he discusses the reasons why the presumption of regularity attaches to government conduct, and he points to two categories of reasons. The first is the systemic cost that would be entailed if the court were to inquire into motive in every case, the cost in terms of the delay that would occur with regard to the investigation, the chill to law enforcement of every case required the prosecutors and the agents to testify about their own motivation. Let's talk about this case. Is the appellate correct that the statements of the confidential informant were not investigated? I don't believe that he's correct, Your Honor. The record at, I believe, page 41 reveals that ATF had evidence that Mr. Bowden was suspected in multiple robberies, armed robberies, and also he was suspected of drug trafficking. So the record reflects that they had evidence of that. And, of course, they turned out to be right, so I don't really know what's the basis. It would be one thing if they turned out to be wrong, and perhaps Mr. Montemarano would say, well, look, they had the wrong guy. The evidence shows that they were right. Now, he pleaded guilty, so his criminal record is not in the record of this case, but there's no evidence to suggest that they were mistaken. Well, let's suppose he was right. Then what happens in this case? Your Honor, it wouldn't make any difference, we submit, with regard to this case. It does undercut the argument that he's raising, but the fact that ATF did follow the protocols with regard to that initial defendant and the protocols are sealed, they're in the record, though, I believe it's page 1015, and it explains the protocol that they went through to determine that this was an appropriately predicated investigation with regard to the lead target. And, of course, they don't know who's going to be brought in, who are the members of the crew, but at least that lead target, we submit they did follow the protocol. Now, the defense has argued here that they did not. He hasn't identified which protocol they violated, but we believe that they did in this case follow the protocol in determining that first defendant was properly predicated. Now, it's our position, Your Honor, that even if they had not followed it, even if they didn't have a protocol, that still wouldn't provide a basis for a selective prosecution defense. But it does in this case, the fact that they did follow the protocol, I believe, is further support for the premise, the principle, that the government is entitled to the presumption of regularity. There's nothing in this case to suggest that the government did not operate above board and in accordance with appropriate constitutional constraints. I know this issue is important, but you've got about eight issues here, and we've only touched one of them. I'd be happy to address any others if the Court wishes. Otherwise, we'll stand on our brief. Well, I do have one. I assume he's going to address this when he gets back up. Is he right about the Hobbs Act robbery is not a crime of violence under pursuant to Johnson? Or does your verdict still stand as to count for because the jury specifically found that they had the firearm in front of it, so a drug conspiracy? Is that your position? That's correct, Your Honor. Even if he were right with regard to the issue of whether the Hobbs Act is a crime of violence, the defense would still lose, that is, this Court would still affirm the verdict because there's an adequate and independent basis for the jury's verdict. There is a special verdict where the jury specifically found, with regard to each defendant, that the gun was possessed in furtherance of a drug trafficking offense, which would be an independent basis to uphold that conviction, as well as a crime of violence. So based upon that, Your Honor, there couldn't be plain error because the result would have been the same either way. But we'll be happy to address the crime of violence issue if the Court wishes. Do you have anything else? Thank you very much. Thank you, Your Honor. Is it Montmorano or Monte Morano? Montmorano. Montmorano. Glad to hear from you. Thank you, Your Honor. In that Mr. Rosenstein was not counsel of record, his misunderstanding of the record below at trial, I should say, his misunderstanding of the record below is perhaps understandable, the government did nothing to confirm Marvin Bowden's criminal record. We argue in our brief that there's no issue taken with that. In my recitation of the matters they concede from our initial brief, as I lay out in our reply brief, they never established who his crew was composed of, how many people were in the crew. They never established any particular crime that he had been involved with with any of these individuals or any other individual. He made representations. I'm the best lawyer in the world. Take it on faith because that's what they did. It's simply not truth they undertook any investigation to determine that these people were part of a crew or his crew. And that's the uncontroverted facts below. But when Mr. Rosenstein says that the ATF followed its protocol, that argument is belied by the response brief filed by the government. They cite to an unreported opinion in U.S. v. Davis by another judge in the District of Maryland, and they describe how the ATF follows the protocol in that case. They have a confidential source who names three individuals as armed drug traffickers and robbers and members of a gang. Sounds bad. The confidential source knows this because he's a member of the gang as well and has been providing information to the government for a year. That's following the protocol.  I represented one of the three people in Davis. When I saw that citation, I fell over laughing. That's exactly what they're supposed to do. Oh, I certainly filed a motion regarding the entrapment issue in that case, and my client, on my advice, took a plea because that's how it's supposed to be done. He's got a history of this. He's involved. They've got information. He's screwed. You can't put it any more clearly. This is the exact other side of the coin. If this court will not reverse for the governmental conduct in this case, when will it? They do no investigation, and they bring in people who have no history for this. The government, in your honors, appear to be focused on the question of predisposition. There's no disposition until the money is dragged across the table in front of them. It's at the second page of the transcript of the very first meeting on March 9th involving my client, the very second page of that transcript. I think it's page 741 in the Joint Appendix. And Special Agent Rogers is talking about bricks of cocaine in multiple numbers, $25,000, $30,000 a piece, five or more bricks, and then from there the numbers go up. By the end of the day, he's talking about 15 to 20. The simple fact is it doesn't matter what your disposition is going in if there's that much money offered to you. You have no money. You have no opportunity. That is outrageous governmental misconduct by itself to offer that much money to someone you have no reason to think would otherwise be involved until you lay that in front of them. And at that point on the second page of the transcript, the very beginning of a conversation that stretches over nearly 30 pages, I suggest to the court, you cannot believe there's predisposition because any question of predisposition is washed away by the amount of money, a life-changing amount. Does the presumption of regularity apply as it applies to prosecution? Does it apply to the ATF? Not even close. I invite the court's attention to our reply brief at page 9 and the rather extended quote from the Davis opinion in the Seventh Circuit written by Judge Easterbrook, which lays out, while we have a constitutional presumption and privilege to be accorded to the prosecution, nothing of that sort applies to law enforcement. Law enforcement can be cross-examined and investigated and is accountable to the court, to the government, and to the defendants for its conduct. And that's the reason we are talking today about selective enforcement. You have not heard me put forward selective prosecution because I don't think we're there yet. But as to selective enforcement and what the ATF is doing when they bring the cases to the U.S. Attorney's Office, regardless of what they're doing or not doing to vet the ATF, but the simple fact is when they come through the door of the U.S. Attorney's Office, we think their goose is cooked. They've already done everything they could do that's wrong. They couldn't have done anything more wrong in this case, short of putting a gun to the head of one of these individuals and saying, you will participate with us. Well, well, well, well, now wait. Wait about that. They could have approached people just on the street or going to a church or going to a school and called people out and asked them, couldn't they have? Absolutely. That would have been worse, wouldn't it? Fair enough, Your Honor. I overstated. I appreciate you. You're making part of a jury argument. I've been trying cases for too long, Your Honor. I'm afraid sometimes I get away with myself. I was going to say, I just want to correct that because it could be worse. I take it that you mean you think it was outrageous and bad. Absolutely, Your Honor, and how fair is that? The government has tremendous resources. They could have undertaken to find out who was involved with Mr. Bowden. They could have undertaken to find out what Mr. Bowden previously was in. Can you form a new crew? Can you form a new crew of people who haven't done it before? The ATF protocol requires there to be an existing crew. It's all over the stuff that we, the one page we were given, and their pronouncements, which are all over my brief. Is it an existing crew or an existing target? So the target in this situation was Bowden, or however you pronounce his name, and he brings the others. Yes. So the target was him. So why is that a bad thing? It's not, but I think they're obligated to find out who he's involved with to ensure that people are not ensnared. The unwary innocent who is lured solely by the prospect of money, who has no predisposition. Because at some point you can buy somebody's virtue. Well, you can't buy everybody's virtue. That's absolutely correct, but that's not the standard. It's not the everybody. At some point there's enough money on the table that people might just forego. Look at the Powerball jackpot. I'm going to say this. Your time has run out, but I'm going to give you ten seconds, and if you want to talk about the Powerball, you can. No. I just suggest that at some point the lure is such that you invest where you might not ordinarily. And as to Your Honor's question, it's a Hobbs Act conspiracy,  as a crime of violence. I think this panel is bound by this court's prior precedent. You're court appointed in this case, aren't you? Yes, Your Honor. We thank you very much. We know that. Thank you. Thank you, and thank you for taking the appointment and making your argument. This is an adversarial system, and we have to rely on people who are willing to come in and argue cases. Thank you, Your Honor. We appreciate it. We thank you for your participation. We'll step down to great counsel and go directly to the last argument of the day. Thank you.
judges: Dennis W. Shedd, Henry F. Floyd, Loretta Copeland Biggs